**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                    Case No. 10-36036-PGH
                                                          Chapter 7
EDWARD JOHN DOLAN,
SSN: xxx-xx-5489
LORI ANN DOLAN,
SSN: xxx-xx-1371

                        Debtors.
_____/

**MICHAEL VATER, ESQ. AND THE TICKTIN LAW GROUP, P.A.'S RESPONSE TO ORDER TO SHOW CAUSE [DE 33] AND ORDER GRANTING CREDITOR'S MOTION TO RE-OPEN DEBTOR'S BANKRUPTCY, COMPEL SURRENDER OF THE PROPERTY PURSUANT TO § 521(a)(2)(B) AND FOR SANCTIONS [DE 32] AND INCORPORATED MEMORANDUM OF LAW**

   Respondents, **MICHAEL VATER, ESQUIRE** and **THE TICKTIN LAW GROUP**

**(collectively, "TTLG")**, pursuant to the Fifth Amendment to the United States Constitution, Rules

7004 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rules 2002, 4001, 9010, and 9014

of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida,

responds to the Order Granting Creditor's Motion to Re-Open Debtor's Bankruptcy, Compel

Surrender of the Property Pursuant to § 521(a)(2)(B) and for Sanctions (the "Reopening Order") and

Order to Show Cause Why Edward John Dolan, Lori Ann Dolan and The Ticktin Law Group, as the

Debtors' Agent, Should Not Be Sanctioned for Violation of 11 U.S.C. § 521(a)(2)(B) [DE 33] (the

"Show Cause Order"), and would show:

**A. – FACTS**:

   1.  Edward John Dolan and Lori Ann Dolan (collectively, the "Debtor") purchased real estate

from a developer located at 5447 Twin Oaks Road, Lake Worth, Florida 33463 (the "Property") in

1993 (Exhibit "A").

   2.  The development, Lee Estates, has a homeowners association  Lee Estates Homeowners

Association, Inc. (the "Association") which has a statutory lien for association assessments on the

Property (Exhibit "B") and a second lien thereupon under § 720.3085(1), Fla. Stats.

   3.  In July 2004 the Debtor refinanced the Property satisfying a prior mortgage loan by

executing and delivering an adjustable rate interest note and first mortgage as well as a planned unit

development and pre-payment penalty rider on the Property to New Century Mortgage Corporation (the "First Mortgage Loan") (Exhibit "C") in the principal sum of $144,800 which mortgage servicing rights were apparently assigned to Carrington Mortgage Services ("Carrington") after securitization by Deutsche Bank National Trust Company as Indenture Trustee ("Deutsche Bank") (Exhibit "D").

4.  In August of 2005, the Debtor executed and delivered a note and second mortgage on the Property to Wachovia Bank, National Association (the "Second Mortgage Loan") (Exhibit "E") in the principal sum of $59,034.02 which was assigned to Wells Fargo Bank, N.A. ("Wells Fargo") through merger and acquisition which constitutes a third lien on the Property under Florida Statutes.

5.  Moreover, there are delinquent taxes due on the Property for which there is an outstanding tax certificate due to the Palm Beach County Tax Collector in the principal sum of $1,598.10 for 2013 taxes which primes all other mortgages and liens on the Property.

6.  A default occurred on the First Mortgage Loan and on July 6, 2010, a foreclosure action on the Property was commenced by Deutsche Bank in state court (the "Foreclosure Case") against the Debtor, Wells Fargo, and the Association as defendants (Exhibits "F" and "G").

7.  Therefore, at the time of commencement of the Foreclosure Case, the Property was encumbered by the rights of multiple creditor parties in addition to the First Mortgage Loan lien upon which the Foreclosure Case arose.  Specifically, the Association had an interest in the Property by virtue of its statutory second lien under Florida law and Wells Fargo had a third lien interest by virtue of the Second Mortgage Loan.

8.  On August 31, 2010, the Debtor commenced this Chapter 7 case and in September 2010, he filed suggestions of bankruptcy in the Foreclosure Case  [Exhibit "G", DE 11+12 in Foreclosure Case].  The Debtor's schedules and statements did not exempt the Property as homestead on Schedule C and stated his intention to surrender the Property on the Statement of Intention listing therein three different parties, Carrington, Wells Fargo and the Association as secured creditors.

9.  On October 14, 2010, the Chapter 7 Trustee filed a report of no distribution [DE 12] abandoning $137,000 of non-exempt assets including the Property and the case was later closed [DE 24].

10.  On October 20, 2010, Carrington filed a Motion for Relief from Automatic Stay on 14 days negative notice [DE 17] (the "Stay Relief Motion") asserting that there was no equity in the Property for the benefit of the Debtor or the bankruptcy estate and stating the Debtor's intention to surrender the Property.

11.  The Stay Relief Motion was not served in accordance with Local Rule 4001-1(A) since it was not served on either Wells Fargo or the Association, parties entitled to notice, service and due process as persons "known to the moving party to claim a legal or equitable interest in any property which may be the subject of the motion."  As defendants in the Foreclosure Case both Wells Fargo's and the Association's interests in the Property were well known to Carrington.

12.  No response was filed to the Stay Relief Motion and the motion was granted by the Court on November 9, 2010 [DE 20].  The Order granting stay relief (the "Stay Relief Order) did not mention that the Property was surrendered.

13.  Carrington's Certificate of Service of the Stay Relief Order was not served on either Wells Fargo or on the Association [DE 21] pursuant to Local Rule 2002-1(D).

14.  On November 19, 2010, Deutsche Bank as Plaintiff filed a copy of the Stay Relief Order in the Foreclosure Case [Exhibit "G", DE 14].

15.  On October 25, 2010, the Debtor filed a copy of the Court's order determining debtor's compliance with filing requirements of section 521(a)(1) [DE 16] in the Foreclosure Case [Exhibit "G", DE 13 in Foreclosure Case].

16.  On December 28, 2010, the Debtor filed a copy of his discharge [DE 22] in the Foreclosure Case [Exhibit "G", DE 15 in Foreclosure Case].

17.  Then, on Mar 18, 2011, Carrington filed its Motion for Summary Judgment [Exhibit "G" DE 22] and moving the state court to default or drop all other parties [Exhibit "G", DE 17+21+23 in Foreclosure Case].

18.  After the Motion for Summary Judgment had been filed, Debtor retained TTLG as his attorney in the Foreclosure Case in late March of 2011.

19.  At no time did the Debtor advise TTLG of his Statement of Intention as filed in this case and never instructed TTLG to take actions in state court in accordance with his intention to surrender

the Property in this case.

20.   At no time prior to March 2015 did Debtor's bankruptcy counsel, Michael Zapin, Esq. ("Zapin") advise TTLG of Debtor's Statement of Intention as filed in this case.

21.   Therefore, TTLG having absolutely no knowledge of the surrender of the Property in the Foreclosure Case vigorously defended Debtor's interest in state court.

22.   On March 29, 2011, TTLG filed Debtor's motion to dismiss or for more definite statement [Exhibit "G", DE 25 in Foreclosure Case] followed by a request for production [Exhibit "G", DE 26 in Foreclosure Case] on April 1, 2011.  Debtor's motions were not responded to by Deutsche Bank other than by the furnishing of a cost bond  [Exhibit "G", DE 29+30 in Foreclosure Case].  TTLG's motions were granted by the state court ordering Deutsche Bank to file an amended complaint  [Exhibit "G", DE 31 in Foreclosure Case].  At no time did Deutsche Bank raise any defense by alerting any party in state court that Debtor's Property had been surrendered in this case until almost four years later.

23.   For instance, Deutsche Bank's Amended Complaint (Exhibit "F") filed on May 9, 2011, is devoid of any reference to surrender of the Property in this Court.

24.   On July 1, 2011, TTLG responded to the Amended Complaint by moving to dismiss the Foreclosure Case [Exhibit "G", DE 31 in Foreclosure Case] and, again, Deutsche Bank's response was devoid of any reference to surrender of the Property in this Court [Exhibit "G", DE 41 in Foreclosure Case].

25.   After a hearing on the Debtor's Motion to Dismiss the Amended Complaint, the state court ordered TTLG to file an answer and affirmative defenses which were filed on May 2, 2012 [Exhibit "G", DE 56 in Foreclosure Case].

26.   On May 29, 2012, Deutsche Bank filed its first reply to Debtor's affirmative defenses (Exhibit "I") and on June 5th filed another such reply incorporating a memorandum of law [Exhibit "G", DE 58 in Foreclosure Case].  Each of Deutsche Bank's Replies failed to allege any reference to any surrender of the Property in this Court.

27.   Deutsche Bank filed its Motion for Summary Judgment [Exhibit "G", DE 62 in Foreclosure Case] on July 16, 2012.  The Motion for Summary Judgment is also devoid of any

reference to any surrender of the Property in this Court.

28.  Litigation in the state court spun on and on for years encompassing some 149 docket entries until the Reopening and Show Cause Orders were filed by Deutsche Bank in the Foreclosure Case.

29.  The first hint that TTLG was given concerning surrender of the Property was on February 23, 2015, in a curt email sent from Deutsche Bank's state court counsel, SHD Legal Group, P.A. ("SHD") after the close of business stating that it had less than two days to capitulate by surrendering the Property to Deutsche Bank or that sanctions could be imposed by this Court (Exhibit "J").

30.  TTLG had been defending the Debtor's interest in the Foreclosure Case for almost four years when it received first light that, in fact, the Property had been surrendered in this case.

31.  During that term countless thousands of dollars has been spent by all parties, the Debtor, Carrington, Deutsche Bank, Wells Fargo, the Association, and, later on as the Foreclosure Case progressed, tax certificate holders (Exhibit "K"), each defending its interests accordingly when, in fact, the Debtor had surrendered the Property years earlier and before thousands of dollars had been spent, perhaps uselessly, by all other case parties.

32.  Thus, Deutsche Bank and its counsel, SHD, lulled TTLG into defending the Foreclosure Case for years when, in fact, it believed as early as October of 2010 that the Debtor had no defenses in the Foreclosure Case due to surrender in this Court.  Instead of informing TTLG of its position, it uttered no word to inform TTLG, Wells Fargo, the Association, and other interested parties of its contention which would have saved all parties thousands of dollars in that forum and this Court's review in this forum.

33.  The Debtor moved to Tennessee in 2013.

34.  On March 13, 2015, Carrington, now through new attorneys, SHD, which failed to file any Notice of Appearance in this case before proceeding forward in contravention of Local Rule 9010-1(A), filed its Motion to Re-open Debtors' Bankruptcy, Compel Surrender of the Property Pursuant to Section 521(a)(2)(B) and for Sanctions [DE 26] (collectively, the "Sanctions Motion").

35.  Review of the Certificate of Service attached to the Sanctions Motion discloses that it was served on the Debtor at his former Florida address of record in this case, Zapin, the Trustee, the

Office of the U.S. Trustee, and all creditors on the Court's USPS mailing service matrix (the "Matrix") that was attached to the motion. Examination of the Certificate of Service and the Matrix discloses TTLG was never served with the Sanctions Motion and that it likely was not received by the Debtor in Tennessee.

36.  On March 13, 2015, the Court set the Sanctions Motion for hearing on April 10th [DE 27]. SHD filed a Certificate of Service of the Notice of Hearing on March 13th [DE 29]. Review of the Certificate of Service of the Notice of Hearing discloses that it was served on the Debtor at his former Florida address, Zapin, the Trustee, the Office of the U.S. Trustee, and all creditors on the the Matrix that was attached to the motion. Examination of the Certificate of Service and Matrix discloses that TTLG was never served with the Notice of Hearing.

37.  On April 8th, before the April 10th hearing, SHD filed a Notice of Withdrawal [DE 31] (the "Withdrawal Notice") of an erroneously filed pre-hearing order to show cause [DE 30] (the "Erroneous Order"). Review of the Certificate of Service attached to the Withdrawal Notice discloses that it was served on the Debtor at his former Florida address, Zapin, the Trustee, the Office of the U.S. Trustee, and no one else since there is no Matrix attached to the Withdrawal Notice notwithstanding SHD's representation on the certificate that a Matrix had been attached. Again, TTLG was never served with the Erroneous Order or the Withdrawal Notice.

38.  With no notice to TTLG of either the Sanctions Motion, the companion Notice of Hearing, the Erroneous Order or the Withdrawal Notice of the Erroneous Order, the Court held the April 10th hearing and on April 13th entered the Reopening Order [DE 32] as well as the actual Show Cause Order setting an evidentiary hearing for April 29, 2015, at 1:00 o'clock p.m. [DE 33].

39.  That same day, SHD proceeded to file three separate Certificates of Service in this case [DE 34+35+36].

40.  Review of the first Certificate of Service [DE 34] discloses that the Reopening Order was served on the Debtor at his former Florida address, Zapin, the Trustee and the Office of the U.S. Trustee, and no one else since there is no Matrix attached to the certificate and no mention of any matrix in any event. Neither TTLG's name nor address appears on the Certificate of Service.

41.  Review of the second Certificate of Service [DE 35] discloses that the Reopening Order

was served for a second time on the Debtor at his former Florida address, Zapin, the Trustee and the Office of the U.S. Trustee, and all creditors on the Matrix.  Neither TTLG's name nor address appears on either the Certificate of Service or on the attached Matrix.

42.  Review of the third Certificate of Service [DE 36] discloses that the Show Cause Order was served on the Debtor at his former Florida address, Zapin, the Trustee, the Office of the U.S. Trustee, and, finally, TTLG on April 13th, but to no other parties on any attached Matrix.

43.  SHD then filed a notice of filing the Reopening and Show Cause Orders in the Foreclosure Case on April 13th on behalf of Deutsche Bank at which time TTLG received its first effective notice of this case's reopening and the issuance of the Show Cause Order.  Meanwhile, TTLG had no opportunity to defend itself regarding any of the findings made by this Court up until this point in time, when there are already findings of surrender and only the issue of sanctions remains.

44.  On April 22nd, TTLG, now knowing of the Property's surrender, immediately filed Debtor/Defendants' notice of compliance with U.S. Bankruptcy Court Order and withdrawing Debtor's answer and affirmative defenses and any other paper filed in the Foreclosure Case which opposed, defended, or contested foreclosure of the mortgage, or otherwise denies any material allegations of the Foreclosure Case complaint (Exhibit "L").

**B. – ARGUMENT:**

45.  While ignorance of the law is no excuse, ignorance of the facts is a good defense.  At no time from March 2011, through April 13, 2015, did any party with knowledge of the Property's surrender, those being the Debtor, Carrington, Deutsche Bank and its counsel SHD, give effective notice of the surrender to TTLG.  Instead, Deutsche Bank and its counsel SHD, either intentionally or negligently hushed up that fact and lulled TTLG to incur thousands of dollars defending foreclosure of the Property and charging its own client thousands of dollars in attorney's fees and costs and all the while, as the Property increased in value, reducing Deutsche Bank's losses thereon.

46.  This Circuit Court earlier ruled in *In re Taylor,* 3 F.3d 1512, 1516 (11th Cir. 1993) and its progeny,  *In re Steinberg,* 447 B.R. 355, 358 (Bankr. S.D. Fla. 2011) and *In re Linderman*, 435 B.R. 715, 718 (Bankr. M.D. Fla. 2009) that surrender of encumbered property is to the secured

parties rather than to the trustee for the benefit of bankruptcy estate and that surrender means that Debtor's opposition to foreclosure of its interest in encumbered property is irrevocably relinquished.

47.   If surrender for the Debtor means silence in state court then let those who have silenced the Debtor speak at once to move the state court case along so that justice is done for all parties in the case under the law in an efficient and thrifty manner without wasting scarce judicial resources and the state's money in hearing the matter.

48.   Deutsche  Bank and its counsel, SHD, were the best parties in the Foreclosure Case to appraise other defendants and the state court that the Debtor had relinquished his interest in the Property and now must be silent in the rest of the matter.

49.   Deutsche Bank and SHE failed miserably to so inform the other defendants and the state court of the facts arising from this Court by either filing the Debtor's Statement of Intention in the state court case, stating such fact in its complaint, replying accordingly to other parties' affirmative defenses, moving for default against the Debtor due to surrender or through recitation of such fact in its summary judgment motion.

50.   But Deutsche Bank and SHD did nothing, encouraging TTLG and the other parties into defending the Foreclosure Case for years when they either knew or believed that defense was an absolute impossibility for the Debtor and so that the other parties could review their position in light of the Debtor's relinquishment and adjust their positions and defenses accordingly.

51.   Later on, Deutsche Bank through its attorneys, SHD, failed to give any notice at all of the filing of the Reopening Motion and Notice of Hearing seeking sanctions against TTLG, certainly an interested party here in this Court pursuant to Fed.R.Bankr.P. 7004(b)(3) as incorporated into Fed.R.Bankr.P. 9014(b) and, thereby, purposefully allowed it to be called to task here with no notice or due process such that it might defend its interests in this case before being called to account for its actions in the Foreclosure Case in this Court.

**I. – <u>DUE PROCESS</u>:**

52.   "No person ... shall ... be deprived of life, liberty, or property, without due process of law." *U.S. Const. Amend. V.*   "An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).        53.  The matters before this Court are clearly contested pursuant to Fed.R.Bankr.P. 9014(b) and thus service, pursuant to Fed.R.Bankr.P. 7004(b)(3), was necessary to provide proper notice to TTLG.  "Although the Bankruptcy Code does not specifically define contested matters, the Advisory Committee Note to Rule 9014 states, 'whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.'"  *In re Roxana C. Ochoa,* 399 B.R. 563 (Bankr.S.D.Fla. 2009).

54.  Fed.R.Bankr.P. 7004(b)(3) simply requires USPS first class mail be utilized for service; yet Carrington and Deutsche Bank through its counsel, SHD, failed to meet this burden in this case with respect to TTLG.  When comparing this lesser requirement of Rule 7004(b)(3) to the requirements of personal service in other areas of law, it is clear that *"limiting the service requirements to first class mail underscores the importance that the defendant receives service by this method; and, that a plaintiff must make reasonable effort to ensure a defendant's receipt.*  Effort to determine the proper name of a corporate officer or manager is not altogether onerous with the aid of the personal computer and the world wide web ..." *In re Carlo,* 392 B.R. 920 (Bankr. S.D.Fla., 2008), (emphasis added).

55.  Here, SHD's Certificates of Service show that it failed to even attempt service on TTLG, let alone conduct a necessary search for the appropriate address to comply with Rule 7004(b)(3). *See Certificates of Service* at DE 21, DE 29, DE 34 and DE 35.

56.  Furthermore, the lack of notice by filing the Statement of Intention in the Foreclosure Case or some other notice of that fact precluded TTLG from knowledge that the Debtor must remain silent in his capacity as a defendant in state court.  Deutsche Bank and Carrington maintained this knowledge from at least October 2010, yet failed to notify TTLG or other parties in the state court of this vital development until years after the fact.

57.  That the Debtor did not inform TTLG of his Statement of Intention indicating surrender of the Property does not excuse Deutsche Bank of its obligations in the Foreclosure Case to provide such effective notice.  Instead of promptly filing such notice in the Foreclosure Case in 2010,

Deutsche Bank and its counsel opted to omit this pivotal fact and litigate the case for years.

58. Carrington and Deutsche Bank's delay in notifying TTLG of this information is a failure to mitigate any losses that TTLG and/or the Debtor may have incurred as a result of legal proceedings in the Foreclosure Case. By failing to notify TTLG and the state court in the Foreclosure Case, the delay incurred by Deutsche Bank is self-inflicted. Deutsche Bank's delay in notifying TTLG in the Foreclosure Case and omission of TTLG from proper service in this case is an utter violation of TTLG's right to be afforded due process and its right to be heard to defend its interests.

## II. – LACK OF DUE PROCESS TO OTHER INTERESTED PARTIES:

59. If surrender for the Debtor means silence on their behalf in state court, then the burden must lie with the party who receives the benefit of surrender to speak at once to move the state court case along. It is incumbent upon the state court Plaintiff, Deutsche Bank, to insure that justice is done for all defendants in the state court case in an efficient and thrifty manner without wasting scarce judicial resources and the courts' money.

60. In addition to the Debtor, other parties maintain interests in the Property. Several of these parties are named as foreclosure defendants in the Foreclosure Case. In litigation involving multiple parties, the rights of one defendant affect the strategy and rights of the others.

61. If one party is silenced with respect to the legal actions it may take in a court proceeding, the other un-silenced parties are entitled to notice of the condition of the silenced party and the legal actions that the silenced party may or may not take on its own behalf. Without such notice, the un-silenced parties are denied due process in the exercise of their rights and interests.

62. The Foreclosure Case was initiated in July 2010 and the Debtor filed his Statement of Intention in this bankruptcy proceeding on August 31, 2010. Carrington was an active party in this bankruptcy case and clearly had knowledge of the Debtor's Statement of Intention.

63. However, despite Carrington's, Deutsche Bank's and SHD's clear knowledge of the Debtor's surrender, they failed to raise this all important fact in the Foreclosure Case for nearly five years. This failure to notify the other parties and the court in the Foreclosure Case caused excessive delay and wasted valuable judicial resources. Carrington and Deutsche clearly bear the burden of

providing such notice.

64.  By virtue of the effect of the Debtor's Statement of Intention indicating surrender, as described in the Show Cause Order and the case law referenced therein, if this Court is correct that surrender is to the secured creditors then the Debtor should have been silenced long ago in the Foreclosure Case.

65.  Instead of providing notice of surrender by the Debtor when the Debtor could not, Carrington, Deutsche Bank and its counsel opted to incur almost five years of legal fees litigating unnecessarily with the Debtor.

66.  The third parties holding interests in the Property, namely the Association and Wells Fargo, have been deprived of effective due process in that the lack of notice of the Debtor's limited ability to participate in the Foreclosure Case impinged on these parties' legal analysis of their own rights within that case.  Each of these third parties is a party in interest and entitled to notice of the legal limitations that the Debtor had as a defendant in order to properly evaluate their legal position, actions, and rights within the proceeding.

67.  The burden of providing such notice does not lie with the Debtor, as the existence of multiple secured creditors renders it impossible for the Debtor to determine to whom the surrender of the Property should be effectuated.  Further, if the Debtor is precluded from active participation in the Foreclosure Case by virtue of his Statement of Intention, he cannot also be obligated to actively provide any notice whatsoever to other defendant parties in the state court.

68. The burden to provide such notice lies squarely with the Plaintiff, Deutsche Bank, the unrestricted moving party with actual knowledge of the Debtor's Statement of Intention as well as the sole party charged with ensuring proper notice to all defendants in order to preserve and effectuate due process of law.

III. – **LACK OF DIRECT NOTICE TO DEBTOR PURSUANT TO FED.R.BANKR.P. 7004**:

69.  The Debtor moved to Tennessee subsequent to the closure of this case in December of 2010.  The Debtor had no duty to update his mailing address following closure of this case.

70.  The Debtor did not receive notice of any documentation filed in this case after the December 2010 case closure.  The Certificates of Service filed by Deutsche Bank's counsel reflect

that mailings of copies of the Reopening Motion and related notice of hearing were mailed to the Debtor pursuant to Fed.R.Bankr.P. 7004(b)(9). However, Rule 7004(b)(9) provides for service to a debtor at the address shown on the petition only "... until the case is dismissed or closed..." *Fed.R.Bankr.P. 7004(b)(9).* 71. The Debtor as principal, did not receive proper notice of the Reopening Motion and anything subsequent thereto. Likewise, TTLG, as agent for the Debtor in the Foreclosure Case, did not receive notice as imputed from its principal.

72. Generally, a principal may be held liable for the acts of its agent that are within the course and scope of agency. *Jaar v. Univ. of Miami,* 474 So.2d 239 (Fla. 3d DCA 1985). *See also Roessler v. Novak,* 858 So.2d 1158 (Fla. 2d DCA 2003). It is the right to control, rather than actual control, that may be determinative in considering an action based on actual agency. *Villazon v. Prudential Health Care Plan, Inc.,* 843 So.2d 842, (Fla., 2003), citing *Nazworth v. Swire Fla., Inc.,* 486 So.2d. 637, (Fla. 1st DCA 1986) ("The standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent. More particularly, it is the *right* of control, and not *actual* control, which determines the relationship between the parties.").

73. Here, the Debtor holds and has retained the right of control over TTLG since the Debtor's retention thereof in 2011. In defending the Debtor's interests as defendant in the Foreclosure Case, TTLG operated as Debtor's agent based on the direction, knowledge and information provided by the principal Debtor.

74. Although TTLG does not agree with the analysis relating to effectuating surrender of property to a secured creditor as set forth in *Taylor, Steinberg* and *Linderman*, TTLG nonetheless respects this reasoning as the controlling law in this Court, unless and until it is reversed by a higher court and, so, upon receipt of notice of the Debtor's surrender, has taken swift action to rectify the contrary legal positions taken in the Foreclosure Case on behalf of the Debtor and to abide by this Court's precedent.

75. Had TTLG known the facts sooner respecting Debtor's intention to surrender the Property in this case, TTLG would not have engaged in the vigorous defense of the Debtor in the Foreclosure Case during the past four years. This is proved by the fact that it instantly ceased

defending the Debtor in state court pursuant to the Order of this Court.

76.  Unfortunately, TTLG did not receive such notice from any of the parties that possessed such knowledge – the Debtor as TTLG's principal or Carrington and Deutsche Bank as the moving Plaintiff in the Foreclosure Case until four years had elapsed.

## IV. – <u>REQUEST FOR RELIEF</u>:

**WHEREFORE**, for the reasons and authorities cited, TTLG respectfully requests that this Honorable Court find that good cause has been shown with respect to TTLG and its attorneys, and enter an Order:

a.  Discharging the Show Cause Order as to TTLG and attorney Michael Vater, Esq.;

b.  Denying any request for sanctions by Carrington and Deutsche Bank;

c.  Directing counsel for Deutsche Bank to file an appropriate notice of surrender by the Debtor in the Foreclosure Case advising all other interested parties of the status of the interests thereof, and

d.  Providing any such other and further relief thereto as deemed just and equitable.

Certificate of Admission

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

/s/ *Peter Spindel*
PETER SPINDEL
Florida Bar No. 816183
Attorney for The Ticktin Law Group, P.A.
Peter Spindel, Esq., PA
P.O. Box 166245
Miami, Florida 33116-6245
Telephone: (305) 279-2126
Facsimile:  (305) 279-2127
email: peterspindel@gmail.com

CERTIFICATE OF SERVICE

I CERTIFY that a true copy of the foregoing was served on all CM/ECF registered users via Notice of Electronic Filing and by regular first class USPS mail, postage fully prepaid, on all other interested parties as indicated on the attached service list on April 27, 2015.

/s/ *Peter Spindel*
PETER SPINDEL, ESQ.

*Via NEF-*
10-36036-PGH Notice will be electronically mailed to:

Adam A. Diaz on behalf of Creditor Carrington Mortgage Services
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Bart Heffernan on behalf of Creditor Carrington Mortgage Services
MLGFL-BK@mlg-defaultlaw.com

Deborah Menotte
menottetrustee@gmail.com, ecf.alert+Menotte@titlexi.com

Office of the U.S. Trustee
USTPRegion21.MM.ECF@usdoj.gov

Michael E. Zapin on behalf of Debtors Edward John Debtor and Lori Ann Debtor
michaelezapin@gmail.com, azpinecf@gmail.com

Peter D Spindel on behalf of TTLG Law Group
peterspindel@gmail.com, peterspindelcmecf@gmail.com

*By USPS mail:*

All other parties on attached USPS mailing service matrix not served via CM/ECF.


3727.1501
\TLG\tlg1.res